UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL K.,

                              Plaintiff,

               v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                         Defendant.
_____

**DECISION
and
ORDER**

**19-CV-0861F**
(**consent**)

APPEARANCES:       LAW OFFICES OF KENNETH R. HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER, of Counsel
                              6000 North Bailey Avenue
                              Suite 1A
                              Amherst, New York 14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202, and

                              RICHARD W. PRUETT
                              Special Assistant United States Attorney
                              United States Attorney's Office
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              1961 Stout Street
                              Denver, Colorado 80294-4003

_____

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 14, 2020, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 15).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on February 14, 2020 (Dkt. 11), and by Defendant on May 14, 2020 (Dkt. 15).

## BACKGROUND

Plaintiff Michael K. ("Plaintiff"), brings this action under Title II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on November 25, 2015, for Social Security Disability Insurance benefits under Title II of the Act ("SSDI"), and Social Security Insurance benefits under Title XVI of the Act ("SSI") ("disability benefits").  Plaintiff alleges he became disabled on April 1, 2015, based on depression, chronic foot pain, bipolar disorder, panic attacks, back pain, and attention deficit hyperactivity disorder ("ADHD").  (R. 61).  Plaintiff's claim was initially denied on March 7, 2016 (R. 87), and, upon Plaintiff's timely request, Plaintiff, represented by Ms. Zulka, Esq., and vocational expert Carrie Anderson ("VE Anderson" or "the VE"), appeared and testified at an administrative hearing on April 7, 2016, before administrative law judge Paul Georger ("the ALJ" "ALJ Georger").  (R. 32-60).  Appearing and testifying at the hearing were Plaintiff, represented by Justine Goldstein, Esq., and vocational expert Dawn Blythe ("the V.E.").  AR at 27.

On May 31, 2018, the ALJ issued a decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council.  (R. 14-27).  On May 15, 2019, the

Case 1:19-cv-00861-LGF   Document 18   Filed 03/12/21   Page 3 of 22

Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. (R. 1-6). On June 27, 2019, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision. (Dkt. 1).

On February 14, 2020, Plaintiff moved for judgment on the pleadings requesting the ALJ's decision be vacated or reversed with the matter remanded for further administrative proceedings (Dkt. 11) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum"). On May 14, 2020, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 for Social Security Cases (Dkt.14-1) ("Defendant's Memorandum"). Filed on June 4, 2020, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 16) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is REMANDED for further proceedings.


**FACTS**[2]

Plaintiff Michael K. ("Plaintiff"), born October 18, 1974, was 40 years old as of May 15, 2015, his alleged DOD, and 43 years old as of May 31, 2018, the date of the ALJ's decision. (R. 37). Plaintiff has a GED, lives alone, and previously worked as a

---

[2] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

3

self-employed delivery driver.  (R. 39-40).  Plaintiff testified that his chronic foot pain

results from sustaining an injury after having a manhole cover dropped on his foot as a

child.  (R. 40-43).

In connection with his disability benefits application, on May 18, 2015, L.C.S.W.

Mary Webb ("L.C.S.W. Webb"), completed an initial mental health assessment on

Plaintiff, noted that Plaintiff reported severe depression after losing his medical delivery

business because of foot pain, a history of being arrested twice on charges of domestic

violence and four-to-five times for petit larceny, and severe difficulties with anger,

arguments with girlfriends, difficulty maintaining relationships, retaining jobs, and

completing tasks.  (R. 246).  L.C.S.W. Webb evaluated Plaintiff with a "mildly anxious"

mood, fair eye contact, goal-directed speech, normal recent and remote memory,

evasive attitude, poor judgment, distracted concentration, poor tolerance for frustration,

and noted that Plaintiff appeared pre-occupied with being diagnosed with bipolar

disease.  (R. 247).  After failing to attend his regularly scheduled mental health

appointments, Plaintiff was discharged for non-compliance on June 11, 2015 (R. 255),

and August 27, 2015 (R. 268).

On June 5, 2015, Ronald J. Clarke, D.O. ("Dr. Clarke"), completed a physical

examination on Plaintiff who reported left foot pain.  (R. 303).

On August 26, 2015, Plaintiff presented to the emergency room at Niagara Falls

Memorial Medical Center, with reports of depression and anxiety, where Psychiatrist

Viktor Yatsynovich, M.D. ("Dr. Yatsynovich"), noted that Plaintiff exhibited drug seeking

behavior, a good appetite, tested positive for cocaine, and diagnosed Plaintiff with a

substance use disorder, rule-out[3] substance-induced anxiety disorder, and rule-out depressive disorder not otherwise specified ("NOS")[4].  (R. 300).

On September 11, 2015, Dr. Yatsynovich completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form and evaluated Plaintiff with very limited ability to walking, standing, sitting, lifting, carrying, pushing, bending, pulling, climbing stairs, and functioning in a work setting at a consistent pace.  (R. 374).

On September 16, 2015, Dr. Clarke completed a follow-up examination on Plaintiff, diagnosed Plaintiff with foot pain and episodic cocaine abuse.  (R. 357).

On September 23, 2015, Plaintiff underwent substance abuse screening at Horizons Health Services, ("Horizons"), failed to attend a counseling session on September 24, 2015, and was screened out of further treatment.  (R. 335).

On January 26, 2016, Dr. Yatsynovich noted Plaintiff's recent incarceration on domestic violence charges, completed a Medical examination for Employability Assessment, Disability Screening, and Alcohol Addiction Determination form, evaluated Plaintiff with moderate limitations to understanding, carrying out and remembering instructions, maintaining attention and concentration, maintaining socially appropriate behavior without exhibiting behavioral extremes, very limited ability to function in a work setting at a consistent pace, and noted that Plaintiff was unable to work.  (R.  372).

---

[3] The phrase "rule-out" describes a physician's attempts to eliminate a particular diagnosis from the list of probable or possible conditions that a patient may have.

[4] "NOS" is a diagnostic label used when an individual's symptoms show they are dealing with a particular type of disorder, *e.g.,* depression, but not enough information is available to diagnose a specific type of the disorder, *e.g.,* dysthymia or bipolar disorder.

On February 3, 2016, Susan Santarpia, Ph.D., ("Dr. Santarpia"), completed a consultative psychiatric evaluation on Plaintiff, noted that Plaintiff reported hearing voices since being a child, evaluated Plaintiff with the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention, concentration and a regular schedule, learn new tasks, relate adequately with others, appropriately deal with stress within normal limits, and noted that Plaintiff had a mild limitation to performing complex tasks independently and making appropriate decisions.  (R. 347).  That same day, Hongbiao Liu, M.D. ("Dr. Liu"), completed an internal medical examination on Plaintiff with normal results.  (R. 350-52).

On February 25, 2016, Dr. Yatsynovich completed an outpatient evaluation on Plaintiff, noted that Plaintiff reported feeling anxious all of the time, hearing voices, and debilitating panic attacks on a daily basis with chest tightening and balance issues, diagnosed Plaintiff with polysubstance dependence, psychosis NOS, rule out schizoaffective disorder, rule out substance-induced psychotic disorder, depressive disorder NOS, and panic disorder with agoraphobia (fear and avoidance of open spaces). (R. 398).

During a medication management examination on May 26, 2016, Psychiatrist Won Hoon Park, M.D. ("Dr. Park"), noted that Plaintiff requested an increase in his Klonopin (anxiety) medication, reported continued auditory hallucinations, and denied any significant mood or psychotic symptoms.  (R. 392).  On August 17, 2016, Dr. Park completed a medication management examination and progress note on Plaintiff, noted that Plaintiff appeared in reasonable control, reported frequent mild-to-moderate panic attacks that affected his ability to think and function, diagnosed Plaintiff with significant

affective instability with anxiety symptoms and increased Plaintiff's Klonopin medication. (R. 388).

On January 17, 2018, LCSW Barbara Hall-Griesmann ("L.C.S.W. Hall-Griesmann"), completed a psychiatric functional assessment co-signed by Dr. Park, noted that Plaintiff's anxiety and auditory hallucinations resulted in marked or serious limitations to Plaintiff's ability to understanding and learning terms, instructions and procedures, describing work activity to others, asking simple questions or requesting assistance, and questions and providing explanations, recognizing and correcting mistakes, identifying and solving problems, using reasonable judgment and making work-related decisions, remembering locations and work-like procedures, understanding and remembering short and simple instructions, carrying out very short and simple oral instructions, sequencing multi-step activities, initiating or sustaining conversation, understanding and responding to social cues, responding appropriately to requests, suggestions, criticism, correction, and challenges from co-workers or supervisors, cooperating and handling conflict with others and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.  (R. 402). L.C.S.W. Hall-Griesmann noted that Plaintiff  had extreme limitations or inability to function in areas of concentration, persistence and pace that include initiating and performing a task and knowing how to complete tasks, completing tasks in a timely manner, maintaining attention for a two-hour segment of time, ignoring distractions while working, sustaining an ordinary routine without special supervision, performing at a consistent pace without interruption from symptoms or an unreasonable number and length of breaks, working in coordination with or in proximity to others without being

unduly distracted, and getting along with co-workers or peers without unduly distracting them and staying on task (R. 403), and opined that Plaintiff's anxiety and auditory hallucinations would result in Plaintiff being absent from work more than four days each month, that Plaintiff had an extreme or complete inability to adapt or manage himself, Plaintiff's serious and persistent mental disorders had lasted for more than two years, Plaintiff controlled his mental health symptoms by living alone in a highly structured environment and eliminating all but minimally necessary contact with the outside world, and that Plaintiff had minimal capacity to cope with changes in his environment.  (R. 404-06).

In this case, the ALJ afforded substantial weight to the consultative examination findings of Dr. Tetzo on March 2, 2016, finding Dr. Tzeto familiar with the Commissioner's social security rules and regulations, and Dr. Tzeto's findings consistent with the evidence in the record.  (R. 23).  The ALJ afforded partial weight to Dr. Liu's February 3, 2016, consultative opinion, determining that Dr. Liu's diagnoses of anxiety, depression, chronic back and foot pain were supported by the record.  (R. 24). The ALJ afforded partial weight to L.C.S.W. Hall-Griesmann's June 21, 2017, psychiatric functional assessment of Plaintiff determining that L.C.S.W. Hall-Griesmann's opinion that Plaintiff had severe limitations to maintaining and remembering instructions, attention and concentration, and functioning in a work setting was inconsistent with Plaintiff's treatment records.  The ALJ afforded little weight to L.C.S.W. Hall-Griesmann's January 18, 2018, functional assessment co-signed by Dr. Park, that evaluated Plaintiff with marked or serious limitations to functioning at work

unsupported by evidence in the record and without the support of a previous diagnosis of schizophrenia or a delusional-related disorder.  (R. 24).

During the administrative hearing, the ALJ posed a hypothetical question to the VE of whether jobs exist for an individual capable of performing work at all levels of exertion, with the same age and education level of Plaintiff, with no past relevant work ("PRW"), and limitations to simple, routine tasks, simple work-related decisions with occasional interaction with supervisors, co-workers and the general public, to which the VE testified that such an individual would be able to perform Plaintiff's past work as a heavy equipment operator.  (R. 57).  Upon further questioning, the ALJ altered the hypothetical to include limitations to occasional use of ramps and stairs, ladders, ropes and scaffolds, balancing, stooping, kneeling, crouching, crawling, (R. 57), which the VE testified that Plaintiff would be capable of performing the jobs of garment sorter, packer and small parts sorter.  (R. 58).  The ALJ posed a third hypothetical to the VE that added limitations to simple, routine work not at a production rate pace, no work-related decisions, no interaction with supervisors, co-workers or the general public, few, if any changes to the worksite or routine, to which the VE found that no jobs would be available in the regional or national economies.  (R. 58).  Plaintiff's counsel, Ms. Zulka, then posed a hypothetical to the VE that included an individual who would be off task up to ten percent of each workday in addition to regularly scheduled breaks, to which the VE opined would result in no available employment.  (R. 59).

## DISCUSSION

### 1.      Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI

benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable

regulations set forth a five-step analysis the Commissioner must follow in determining

eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v.*

*Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

1982).  The first step is to determine whether the applicant is engaged in substantial

gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§

404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe

impairment which significantly limits the physical or mental ability to do basic work

activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and

416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or

"the Listings"), and meets the duration requirement of at least 12 continuous months,

there is a presumption of inability to perform substantial gainful activity, and the claimant

is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§

423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth

step, however, if the impairment or its equivalent is not listed in Appendix 1, the

Commissioner must then consider the applicant's "residual functional capacity" or "RFC"

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  If the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, or if the defendant fails to meet its burden at the fifth step, the inquiry ceases and the claimant is eligible for disability benefits.  *Id.*

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 9, 2016, Plaintiff's disability application date, and suffers from the severe impairments of anxiety, depression, substance abuse disorder and chronic foot pain (R. 16), that Plaintiff's low back pain does not cause more than a minimal limitation in the claimant's ability to perform basic work activities and thus is not severe.  *Id.* at 16-17.  The ALJ found that Plaintiff did not have an impairment or combination of

impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, *id.* at 17, and retained the RFC to perform less than light work with limitations to lifting, carrying, pushing or pulling 20 pounds occasionally and ten pounds frequently, sitting or standing for six hours in an eight-hour workday, occasionally climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, crawling, responding appropriately to supervisors, coworkers, the public, and dealing with changes in a work setting, performing simple, routine, repetitive tasks, and limited to simple work-related decisions.  (R. 20).  Based on Plaintiff's RFC and the VE's testimony, the ALJ concluded that Plaintiff was capable of performing the jobs of garment sorter, packer, and small parts sorter, *id.*, at 26, such that Plaintiff was not under a disability as defined in the Act at any time from the alleged onset date of April 1, 2015, through May 31, 2018, the date of the ALJ's hearing decision.  *Id.* at 26-27.

Plaintiff alleges that the ALJ violated the treating physician[6] rule by analyzing Dr. Yatsynovich's opinion using factors appropriate to discussing the findings of "other sources" like Plaintiff's social worker L.C.S.W. Hall-Griesmann, Plaintiff's Memorandum at 16-19.  In further support of his motion, Plaintiff argues the ALJ erred by not including the entirety of Dr. Yatsynovich's assessed non-exertional limitations into the ALJ's RFC assessment of Plaintiff, particularly with regard to the extent to which Dr. Yatsynovich found that Plaintiff had moderate limitations to maintaining attention and concentration, understanding, remembering, and carrying out instructions, maintaining socially appropriate behavior without exhibiting behavioral extremes, and a severe limitation to functioning at a consistent pace at work.  *Id.*  Plaintiff further alleges that the ALJ failed

---

[6] Plaintiff assertion that both Drs. Yatsynovich and Park are Plaintiff's treating psychiatrists is not challenged by Defendant.

to include any discussion of the weight afforded to the findings of L.C.S.W. Webb. Plaintiff's Memorandum at 18-21.  In opposition, Defendant maintains that the ALJ appropriately evaluated the overall record of Plaintiff's allegations of disabling limitations, Defendant's Memorandum at 13-21, and properly weighed Dr. Yatsynovich's and L.C.S.W. Hall-Griesmann's "check-box" form evaluations of Plaintiff.  *Id.* at 13-28. In reply, Plaintiff argues that because the ALJ failed to properly evaluate Dr. Yatsynovich's opinion and to address or incorporate the more limiting aspects of the opinion into the RFC assessment, the RFC assessment is not based on substantial evidence.  Plaintiff's Reply at 1-2.  Defendant's motion is without merit.

**Residual functional capacity**

The so-called residual functional capacity or RFC, is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR[7] 96-8p; 1996 WL 374184, at *1.  In making an RFC assessment, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on those facts, along with the claimant's subjective symptoms of pain and other asserted limitations.  20 C.F.R. §§ 404.1545, 416.945.  The "RFC is not the *least* an individual can do despite his or her limitations, but the *most*."  SSR 96-8p; 1996 WL 374184, at * 1 (italics in original).  "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including

---

[7] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

the impact of any related symptoms." *Id.* If there is "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.* "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary,[8] light, medium, heavy, and very heavy." *Id.* Although the RFC assessment is reserved for the commissioner, the assessment remains a medical determination that must be based on medical evidence of record, such that the ALJ may not substitute his or her own judgment for competent medical opinion. *Walker v. Astrue*, 2010 WL 2629832, at * 6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2), and 416.927(e)(2)), *report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010). The Second Circuit has upheld an RFC assessment where the ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where there was sufficient evidence in the record to permit the ALJ to assess the RFC, including years of treatment notes and evidence of the claimant's social and recreational activities. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 6-9 (2d Cir. Jan. 18, 2017). Moreover, where substantial evidence in the record supports the ALJ's RFC assessment, there is no "gap" in the medical record requiring the ALJ to further develop the record by obtaining an additional medical source statement from one of Plaintiff's

---

[8] Sedentary work involves lifting no more than 10 pounds at a time or occasionally lifting or carrying articles like docket files, ledgers and small tools.

treating physicians.  *See Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. Jan. 28,

2013) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no

obvious gaps in the administrative record, and where the ALJ already possesses a

'complete medical history,' the ALJ is under no obligation to seek additional information.

. . .")).

The burden to demonstrate functional limitations is on the Plaintiff.  *See*

*Reynolds v. Commissioner of Social Security*, 2019 WL 2020999, at *4 (W.D.N.Y. May

8, 2019).  ALJs, however, must always give good reasons for assigning weight to

medical source opinions.  *See Cunningham v. Colvin*, 2014 WL 6609497, at *6

(W.D.N.Y. Nov. 20, 2014) (ALJ must always give good reasons for the weight afforded

to a medical source opinion).

**Treating physician rule**

As relevant, 20 C.F.R. § 416.927(f)(1) provides

 . . .. opinion[s] from a medical source who is not an acceptable medical source
or from a nonmedical source may outweigh the opinion of an acceptable medical
source, including the opinion of a treating source.  For example, it may be
appropriate to give more weight to the opinion of a medical source who is not an
acceptable medical source if he or she has seen the individual more often than
the treating source, has provided better supporting evidence and a better
explanation for the opinion, and the opinion is more consistent with the evidence
as a whole.

20 C.F.R. § 416.927(f)(1).

The treating physician rule applies to disability claims filed before March 27,

2017, and, as a result, applies to Plaintiff's claim filed on January 16, 2015.  *See* 20

C.F.R. § 404.1527.  The Act requires ALJs to grant significant weight to treating

physician opinions supported by medical evidence in the record, and requires treating

physician opinions be granted "controlling weight" when the opinion is "well supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2).  Treating physician opinions are not determinative, and granted controlling weight only when they are not inconsistent with other controlling evidence, 20 C.F.R. § 404.1527(d); *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002)), and the treating physician rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." *See Santiago v. Barnhart,* 441 F.Supp.2d 620, 629 (S.D.N.Y. 2006) (bracketed material added).  ALJs may not reject a treating physician opinion solely on inconsistencies between the physician's treatment notes and medical opinion.  *See Balsamo v. Chater,* 142 F.3d 75, 80 (2d Cir. 1999).

In this case, the ALJ failed to properly evaluate Dr. Yatsynovich's opinion using the factors required under the treating physician rule and provide reasons for discounting Dr. Yatsynovich's opinion on Plaintiff's inability to function at work.  In particular, the ALJ afforded only partial weight to the findings in Dr. Yatsynovich's January 1, 2016, Medical Examination for Employability Assessment form, the ALJ, determining that "although [L.C.S.W. Hall-Griesmann's] purported diagnoses are consistent with the record overall, the medical record, including treatment records from her own organization, do not support such significant functional limitations" (R. 24) (bracketed material added).  Such a determination violates the treating physician rule by not providing Plaintiff or this court with enough detail necessary to determine whether

the ALJ's finding is supported by substantial evidence, an error which requires
REMAND.  *Balsamo,* 142 F.3d at 81-82.

Notably, the ALJ's failure is particularly significant in this case as, Dr.
Yatsynovich's January 1, 2016, opinion that Plaintiff is functionally unable to work is
supported by other substantial evidence in the record.  Specifically, on September 11,
2015, Dr. Yatsynovich evaluated Plaintiff with very limited abilities to walking standing,
sitting, lifting, carrying, climbing stairs, and  functioning in a work setting at a consistent
pace (R. 374), and on June 21, 2017, L.C.S.W. Hall-Griesmann, consistent with Dr.
Yatsynovich's opinion, evaluated Plaintiff with very limited ability to understanding and
remembering instructions, maintaining attention and concentration, functioning in a work
setting at a consistent pace, and opined that Plaintiff's psychosis contraindicated
Plaintiff's ability to work.  (R. 369-70)  On January 17, 2018, Dr. Park found that
Plaintiff's anxiety and auditory hallucinations resulted in marked or serious limitations to
Plaintiff's ability to understanding and learning terms, instructions and procedures,
describing work activity to others, asking simple questions or request assistance, and
questions and providing explanations, recognizing and correct mistakes, identifying and
solving problems, using reasonable judgment and making work-related decisions,
remembering locations and work-like procedures, understanding and remembering
short and simple instructions, carrying out very short and simple oral instructions,
sequencing multi-step activities, initiating or sustaining conversation, understanding and
responding to social cues, responding appropriately to requests, suggestions, criticism,
correction, and challenges from co-workers or supervisors, cooperating and handling
conflict with others, keeping social interactions free of excessive irritability, sensitivity,

argumentativeness, or suspiciousness (R. 402), and that Plaintiff had extreme limitations or inability to function in areas of concentration, persistence and pace that include initiating and performing a task and knowing how to complete tasks, completing tasks in a timely manner, maintaining attention for a two-hour segment of time, ignoring distractions while working, sustaining an ordinary routine without special supervision, performing at a consistent pace without interruption from symptoms or an unreasonable number and length of breaks, working in coordination with or in proximity to others without being unduly distracted, and staying to get along with co-workers or peers without unduly distracting them and staying on task.  (R. 403).

Moreover, to the extent that the ALJ afforded more weight to Dr. Tzetzo's finding that Plaintiff had moderate limitations to maintaining attention and concentration for extended periods, performing activities within a schedule, sustaining an ordinary routine without supervision, and completing a normal workday and workweek without interruptions from psychologically-based symptoms and was able to work in jobs with simple work tasks involving brief and superficial contact with supervisors, co-workers and the public (R. 24 referencing R. 66-70), Dr. Tzetzo is a one-time examining disability examiner of Plaintiff's claim at the initial level of disability review.  In contrast, Plaintiff's treating psychiatrist, Dr. Yatsynovich, has a substantial treating history with Plaintiff and is therefore better positioned to evaluate Plaintiff's mental impairment.  *See Nasca v. Colvin,* 216 F.Supp.3d 291, 297 (W.D.N.Y. 2016) ("[t]he treating physician rule 'recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purpose of a disability hearing.'") (quoting *Santiago v. Barnhart,*  441 F.Supp.2d 620,

629 (S.D.N.Y. 2006)).  The ALJ's failure to properly evaluate Dr. Yatsynovich's treating physician opinion by providing reasons for discounting Dr. Yatsynovich's opinion therefore violates the treating physician rule and requires REMAND.  *See Acly-Blakeslee v. Commissioner of Social Security*, 2019 WL 7048713, at *3-4 (W.D.N.Y. Dec. 23, 2019) (remand for further proceedings where ALJ failed to evaluate the entirety of treating physician opinions in accordance with the treating physician rule and provide "good reasons" for accepting or rejecting such opinions).   Plaintiff's motion on this issue is therefore GRANTED.

Plaintiff's further allegation, that the ALJ erred in failing to discuss of L.C.S.W. Webb's May 18, 2015, opinion that Plaintiff had severe limitations to organizing and completing tasks and sustaining attention and was moderately limited in his ability to managing his relationships also requires REMAND.

Licensed clinical social workers like L.C.S.W. Webb are not considered "acceptable medical sources" for purposes of disability review and their opinions are therefore not entitled to controlling weight.  *See Martino v. Commissioner of Social Security,* 339 F. Supp.3d 118, 128 (W.D.N.Y. 2018).   Yet, when evaluating the opinions of "other sources" like L.C.S.W. Webb and Hall-Griesmann, ALJs should use the same factors as those used to evaluate acceptable medical sources, *see Howard v. Commissioner of Social Security,* 203 F. Supp. 3d 282, 300 (W.D.N.Y. 2016), and have a duty to discuss their opinions.  S.S.R. 06-03P, 2006 WL 232939, at *6 (ALJs should explain the weight afforded opinions from other sources).  In this case, the ALJ's failure to provide any discussion of L.C.S.W. Webb's findings, which further support Dr. Yatsynovich's opinion that Plaintiff is unable to work, also requires REMAND.

Although not alleged by Plaintiff, in accordance with the court's plenary authority, *see* 42 U.S.C. § 405(g), the court finds the ALJ's decision to afford little weight to Dr. Park's finding that Plaintiff had marked or serious limitations to work-related areas of functioning because Dr. Park's finding was without support of an underlying diagnosis of schizophrenia or delusion-related disorder (R. 24), legally erroneous.

When analyzing treating physician reports like those of Dr. Park, the ALJ may not arbitrarily substitute his or her own judgment for a competent medical opinion. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983)). ALJs are further prohibited from rejecting a treating physician's opinion based solely on the ALJ's perceived inconsistencies between the physician's treatment notes and the physician's own medical opinion. *See Balsamo*, 142 F.3d at 80 ("The ALJ erred in rejecting the opinions of these [treating] physicians solely on the basis that the opinions allegedly conflicted with the physician's own clinical findings."); *Griffel v. Berryhill*, 2017 WL 4286254, at *9 n. 10 (E.D.N.Y. Sept. 26, 2017) (ALJs may only reject treating source opinions based on contradictory medical opinions, not the ALJ's interpretation of the medical record).

In this case, on January 16, 2018, Dr. Park diagnosed Plaintiff with polysubstance dependence, psychosis NOS, rule-out schizoaffective disorder, rule-out substance-induced psychotic disorder, depressive disorder, unspecified, and panic disorder with agoraphobic history (R. 392-93). The ALJ's error in determining that Dr. Park's findings were unsupported by a medical diagnosis is thus legal error that requires REMAND.

In accordance with the foregoing, Discussion, *supra*, at 13-21, REMAND is required to afford the ALJ the opportunity to further review the record in accordance with the treating physician rule.  Upon such review, the ALJ, if required, should solicit additional testimony from a VE, and proffer hypotheticals to the VE that include any new limitations the ALJ deems relevant to Plaintiff's ability to function, based on a proper assessment of the medical opinions in the record, and whether any jobs exist that an individual like Plaintiff would be capable of performing in the regional and national economies.

### CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 11) is GRANTED; Defendant's motion (Doc. No. 15) is DENIED.  The matter is REMANDED to the ALJ for further proceedings consistent with this DECISION and ORDER.  The Clerk of Court is directed to close the file.

SO ORDERED.

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March 12, 2021
             Buffalo, New York